**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NECDET AKTAS** and **LISA AKTAS,**

|                                     |                          |
|-------------------------------------|--------------------------|
|                   **Plaintiffs,**   | 1:09-cv-1436             |
|                                     | (GLS\DRH)                |
|          **v.**                     |                          |

**JMC DEVELOPMENT CO., INC.;**
**JOSEPH M. CANTANUCCI, JR.;**
**GRANVILLE GLASS AND GRANITE,**
**INC.; GRANVILLE GLASS AND**
**GRANITE OF HUDSON FALLS, INC.,**
as Successor in interest to Granville
Glass and Granite, Inc.; **STEPHEN M.**
**JUNG** d/b/a **JUNG ARCHITECTURE;**
**JAMES P. LYNCH, P.E., PLLC;**
**SCOTT HAMILTON** d/b/a **HAMILTON**
**PLUMBING; BRADY'S WOOD**
**FLOORS LLC;** and **COUNTY OF**
**WARREN,**

                    **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|------------------|-----------------|

**FOR THE PLAINTIFFS:**
Cooper, Erving Law Firm               PHILLIP G. STECK, ESQ.
39 North Pearl Street, 4th Floor
Albany, NY 12207

**FOR THE DEFENDANTS:**
_JMC Development Co., Inc. and_
_Joseph M. Cantanucci, Jr._
Wein, Frament Law Firm                JASON A. FRAMENT, ESQ.
951 Albany Shaker Road
Latham, NY 12110

*Granville Glass and Granite, Inc.,*
*and Granville Glass and Granite of*
*Hudson Falls, Inc.*
Anderson Byrne, LLC                          MICHELE L. ANDERSON, ESQ.
48 Union Avenue
Suite 1
P.O. Box 3392
Saratoga Springs, NY 12866

*Stephen M. Jung*
Pro se
P.O. Box 154
Schroon Lake, NY 12870

*James P. Lynch, P.E., PLLC*
Milber, Makris Law Firm                      RICHARD A. LILLING, ESQ.
2809 Wehrle Drive
Suite 14
Williamsville, NY 14221

*Scott Hamilton d/b/a Hamilton Plumbing*
NO APPEARANCE

*Brady's Wood Floors LLC*
NO APPEARANCE

*County of Warren*
FitzGerald, Morris Law Firm                  MARTIN A. COHEN, ESQ.
16 Pearl Street
P.O. Box 2017
Glens Falls, NY 12801

**Gary L. Sharpe**
**District Court Judge**

2

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs Necdet and Lisa Aktas bring this action against defendants JMC Development Co., Inc., Joseph M. Cantanucci, Jr., Granville Glass and Granite, Inc., Granville Glass and Granite of Hudson Falls, Inc., Stephen M. Jung, James P. Lynch, P.E., PLLC, Scott Hamilton, Brady's Wood Floors LLC, and Warren County, alleging various claims of breach of contract, breach of warranty, negligence, and fraud.  (Compl., Dkt. No. 1.) Pending are JMC and Cantanucci's motion to dismiss, Warren County's motion to dismiss, and the Aktases' motion to amend.  (Dkt. Nos. 8, 12, 21.)  For the reasons that follow, JMC and Cantanucci's motion is denied, Warren County's motion is granted, and the Aktases' motion to amend is granted in part and denied in part.

## II. Background

### A.    Factual History

Plaintiffs Necdet and Lisa Aktas, residents of Saddle River, New Jersey, are owners of a house located at 223 Mill Creek Road, Adirondack, Warren County, New York.  (*See* Compl. ¶¶ 1, 16, Dkt. No. 1.)  In October 2008, the Aktases entered into a contract with defendant JMC to renovate

and make additions to the house.  (*See id.* at ¶ 17.)  JMC's places of

business are Troy and Schroon Lake, New York, and defendant Joseph M.

Cantanucci, Jr. is the sole owner, shareholder, director, and officer of JMC.

(*See id.* at ¶ 4.)  The contract was to be performed pursuant to the plans,

construction documents, and specifications issued by defendant Stephen

M. Jung of Jung Architecture, which is organized and exists under New

York State law.  (*See id.* at ¶ 19.)  Upon Jung's recommendation, JMC

retained defendant James P. Lynch, P.E., PLLC of Clifton Park, New York,

to provide structural analysis of the renovations and additions.  (*See id.* at ¶

20.)  In addition, defendant Granville Glass of Hudson Falls, New York,

was hired as a subcontractor to provide and install marble and granite in

the house; defendant Scott Hamilton of Clifton Park, New York, was

subcontracted to provide and install bathroom and kitchen fixtures; and

defendant Brady's Wood Floors LLC of Clifton Park, New York, was

subcontracted to sand and finish the house's wood floors.  (*See id.* at ¶¶

21-24.)

　　　According to the Aktases, due to irreconcilable difficulties arising

during 2009, their relationship with JMC and the several subcontractors

broke down.  (*See id.* at ¶ 25.)  In response, the Aktases hired Atelier

4

Consulting, LLC, an owner's representative company, which retained the services of an engineer and architect to review the work done on the house.  (*See id.*)  As alleged by the Aktases, Atelier's review revealed various unprofessional and unreasonable failures including: "grossly deficient" architectural plans that resulted in imperfections, errors, and deficiencies affecting the structural soundness of the work; omissions by Jung in supervising and correcting the work; "grossly deficient" structural calculations by the engineer that resulted in inaccurate and inadequate structural framing; and grossly improper installations of the electrical, plumbing, heating, ventilation, and air conditioning systems, that were subsequently covered up by JMC and its subcontractors.  (*See id.* at ¶ 26.)  Furthermore, the Aktases allege that JMC and its subcontractors caused extensive structural damage and defects to the house, which are outlined in detail in the complaint.  (*See id.*)

Thereafter, the Aktases filed a New York Freedom of Information Law request and learned that Warren County, while performing inspections of the project during 2009, discovered substantial structural problems and demanded that JMC and the subcontractors make the appropriate changes and corrections.  (*See id.* at ¶ 27.)  However, despite JMC and the

5

subcontractors' failure to remedy the problems, Warren County never issued a violation or work stoppage order, and never notified the Aktases about the problematic conditions.  (*See id.*)  According to the Aktases, JMC, Jung, and Lynch were aware of the inspection results and the consequent demands, but never notified the Aktases about the actual results or made the requisite corrections.  (*See id.* at ¶ 28.)  Rather, the Aktases allege that JMC and Cantanucci merely notified them that the inspections occurred, and that in doing so, left them with the false impression that the inspections were successful and that the work was proceeding according to plan.  (*See id.* at ¶ 29.)  And in the Aktases' words, "JMC intentionally and fraudulent[ly] misrepresented the progress of the project in order to extract further payments from [the Aktases]."  (*Id.* at ¶ 30.)  The Aktases further allege that during this time, Jung continued to certify that the work was being completed properly.  (*See id.* at ¶ 31.)

On September 4, 2009, the Aktases notified JMC in writing that they were terminating the contract.  (*See id.* at ¶ 32.)

**B.   Procedural History**

On November 5, 2009, the Aktases filed an action in the United States District Court for the Southern District of New York, which was

6

dismissed for improper venue on December 22, 2009.  (*See* Pl. Resp.

Mem. of Law at 4, Dkt. No. 21:2.)  On November 24, 2009, JMC filed a

mechanic's lien with the Warren County Clerk against the 223 Mill Creek

Road property.  (*See id.*)  The Aktases commenced the present action in

the United States District Court for the Northern District of New York on

December 24, 2009.  (*See* Compl., Dkt. No. 1.)  Then, on January 13,

2010, JMC filed an action against the Aktases in New York State Supreme

Court, Warren County, seeking foreclosure of the mechanic's lien and

asserting claims for breach of contract and unjust enrichment.  (*See* JMC

Mem. of Law at 3, Dkt. No. 8:3.)  JMC subsequently moved this court to

abstain from hearing this action based on the concurrent state proceeding,

or alternatively, to dismiss the Aktases' fraud claim and their claim against

Cantanucci.  (*See* Dkt. No. 8.)  Warren County filed a motion to dismiss for

failure to state a cause of action against it.  (*See* Dkt. No. 12.)  In response,

the Aktases opposed both motions and sought the court's permission to

amend the complaint.  (*See* Dkt. No. 21.)

## III.  Discussion

## A.   Abstention

Generally, in situations involving the contemporaneous exercise of

concurrent jurisdiction by a federal and a state court, "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotation marks and citations omitted); *see also Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) ("[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction." (internal quotation marks and citation omitted)).  Accordingly, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.  Thus, a district court's decision to postpone or decline the exercise of jurisdiction "is an extraordinary and narrow exception to [its] duty ... to adjudicate a controversy properly before it," and such a decision can only be justified under "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959).

In deciding whether abstention is appropriate, the district court must first determine whether the concurrent proceedings are actually "parallel." *See Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).

8

Because "[s]uits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum," *id.* (internal quotation marks and citation omitted), the court should consider "whether both actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested," *Hous. Works, Inc. v. City of New York*, 72 F. Supp.2d 402, 417 (S.D.N.Y. 1999) (citation omitted).  If the federal and state actions are truly parallel, the court must carefully consider "both the obligation to exercise jurisdiction and [a] combination of factors counselling against that exercise."  *Colorado River*, 424 U.S. at 818-19 (citation omitted).  These factors include:

> (1) the assumption of jurisdiction by either court over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, ... (4) the order in which jurisdiction was obtained[,] ... (5) whether state or federal law supplies the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Burnett*, 99 F.3d at 76 (internal quotation marks and citations omitted). These factors should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983), keeping in mind that "no single factor is necessarily decisive," *De Cisneros v. Younger*, 871 F.2d

9

305, 307 (2d Cir. 1989).  Importantly, though, "the balance should be heavily weighted in favor of the exercise of jurisdiction."  *Sheerbonnet, Ltd. v. Am. Express Bank Ltd.*, 17 F.3d 46, 49 (2d Cir. 1994) (citation omitted).

As a threshold matter, the court will accept that the actions are sufficiently parallel.  Nevertheless, under the present set of facts, the relevant factors weigh against abstention.

Here, the only factor that seems to favor JMC's request for abstention is the first.  Notably, in appropriate circumstances, jurisdiction over the res can be a decisive basis for abstention.  *See F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 101-02 (2d Cir. 1999).  And it is apparent that the state action to foreclose on the mechanic's lien is an in rem proceeding that would place exclusive jurisdiction over that property with the state court. *See id.*; *see also Oneida Indian Nation of N.Y. v. Madison County*, 401 F. Supp.2d 219, 226 (N.D.N.Y. 2005) ("[O]nce a state court has taken jurisdiction of the res that is the subject of a state court in rem proceeding, a federal court cannot also exercise jurisdiction of the res." (citation and italics omitted)).  However, the action before this court is fundamentally in personam and is therefore "not foreclosed by the state court in rem proceeding."  *Oneida Indian Nation*, 401 F. Supp.2d at 227 (italics omitted).

10

In fact,

> federal district courts may adjudicate matters that indirectly
> relate to the state's exercise of in rem jurisdiction over a piece
> of property in a mechanic's lien foreclosure, as long as "the
> final judgment does not undertake to interfere with the state
> court's possession save to the extent that the state court is
> bound by the judgment to recognize the right adjudicated by the
> federal court."

*York Hunter Constr., Inc. v. Avalon Props., Inc.*, 104 F. Supp.2d 211, 215

(S.D.N.Y. 2000) (italics omitted) (quoting *United States v. Certified Indus.,*

*Inc.*, 361 F.2d 857, 860 (2d Cir. 1966)).  Moreover, this factor alone is not

enough to overcome the presumption in favor of this court's jurisdiction,

particularly when considered in light of the order in which the actions were

filed and the difference between the two actions in the claims asserted, the

parties currently involved, and the amount of damages sought.

As to the second factor, the court is not persuaded that adjudication

of this matter in the Northern District of New York would inconvenience

JMC, Cantanucci, or the other defendants in any meaningful way.  Rather,

the underlying property, evidence, potential witnesses, and defendants are

all located within a ninety-mile radius of the Albany federal courthouse.

And with particular regard to the movant, JMC maintains a principal place

of business in Troy, New York.  Thus, because the federal forum is no less

11

convenient than Warren County Supreme Court, this factor favors the exercise of jurisdiction.

The third and fourth factors also weigh against abstention.  Although both actions are in the earliest of stages, it is clear that the relevant parties have been served in this action and that JMC, Cantanucci, Granville Glass, Lynch, Jung, and Warren County have each filed an answer or a dispositive motion in lieu of an answer.  Yet, as to the state action, it is unclear whether issue has been joined and whether all the potentially liable defendants are parties.  In addition, there is nothing to suggest that retaining jurisdiction would create "a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."  *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 524 (2d Cir. 2001).  Furthermore, the order in which jurisdiction was obtained weighs against abstention.  While hesitant to characterize JMC's state court filing as contrived or vexatious, the court is nonetheless suspicious of the timing with which JMC filed the mechanic's lien—shortly after the Aktases commenced the action in the Southern District—and the state action—shortly after the present action was commenced.  Regardless, even if JMC acted in complete good faith, the priority of the Aktases' filing

12

favors federal jurisdiction.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20.

Lastly, the court considers the fifth and sixth factors to be of no help to JMC's position.  Although the issues before the court are exclusively governed by state law, they do not appear to present novel or unusually complex questions of law.  "As all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985).  Moreover, diversity jurisdiction was intended for this type of situation where the action is brought by an out-of-state plaintiff against local defendants.  *See Minot v. Eckardt-Minot*, 13 F.3d 590, 593 (2d Cir. 1994) ("[C]ourts should be wary of using judicially-crafted abstention doctrines to deny out-of-state litigants a federal forum that they prefer." (citations omitted)); *see generally Lumberman's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54-55 (1954) (Frankfurter, J., concurring).

In sum, the court is unable to find "'exceptional' circumstances ... to justify the *surrender* of [federal] jurisdiction," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25-26, and therefore denies JMC's motion to abstain.

**B.   <u>Motion to Amend</u>**

13

Rule 15(a) provides that where a party seeks to amend his pleading before trial, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  "A motion to amend should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (internal quotation marks and citation omitted).  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).  Accordingly, where the plaintiff submits a proposed amended complaint, "the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted."  *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  However, the court "should not deny leave to file a proposed amended complaint ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief ...."  *Id.* (internal quotation marks and citation omitted).

Rule 12(b)(6) provides that a cause of action shall be dismissed if a

complaint fails "to state a claim upon which relief can be granted."  FED. R.

CIV. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court's task is

"merely to assess the legal feasibility of the complaint, not to assay the

weight of the evidence which might be offered in support thereof."  *AmBase*

*Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003)

(internal quotation marks and citation omitted).  Therefore, in reviewing a

motion to dismiss, a court "must accept the facts alleged in the complaint

as true and construe all reasonable inferences in [the plaintiff's] favor."

*Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted).

"To survive dismissal, the plaintiff must provide the grounds upon

which his claim rests through factual allegations sufficient 'to raise a right to

relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)).  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation

marks and citations omitted).  Rather, the claim must be "plausible on its

15

face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (citation omitted).  Thus, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, but "does not impose a probability requirement," *Twombly*, 550 U.S. at 556.

## 1.    JMC's Motion to Dismiss

JMC moves to dismiss the Aktases' proposed amended fraud claim on the basis that it is not pleaded with the necessary level of particularity, and also that it is redundant of their breach of contract claim.  (*See* JMC Mem. of Law at 12-15, Dkt. No. 8:3; *see also* JMC Reply Mem. of Law at 8-9, Dkt. No. 25:1.)  Additionally, should the Aktases' fraud claim be dismissed, JMC seeks dismissal of their "alter ego" cause of action.

Claims sounding in fraud or mistake are subject to Rule 9(b)'s heightened pleading requirements.  *See* FED. R. CIV. P. 9(b).  To comply with those requirements and survive a motion to dismiss, a complaint alleging fraud or mistake must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc.*, 493 F.3d. at 99 (citation omitted). "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, [and] safeguard his reputation from improvident charges of wrongdoing ...." *Id.* (citation omitted).

To establish a claim of fraud in addition to a breach of contract claim, it is not enough for a plaintiff to show "merely promissory statements regarding future acts." *Mora v. RGB, Inc.*, 17 A.D.3d 849, 852 (3d Dep't 2005) (citations omitted). Rather, a plaintiff must show, among other things, "misrepresentations that are misstatements of material fact or promises with a present, but undisclosed, intent not to perform." *Id.* (citations omitted); *see also Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94 (N.Y. 1985).

Having reviewed the Aktases' proposed amendments regarding their claim of fraud against JMC and Cantanucci, the court concludes that they sufficiently allege a viable fraud claim. In essence, the Aktases allege that on several occasions, after receiving the County's inspection reports, JMC and Cantanucci failed to disclose the full extent of the inspections and affirmatively misrepresented the results of the inspections in order to

induce the Aktases to make the next payment.  (*See* Proposed Am. Compl.

¶¶ 69-81, Dkt. No. 21:4.)  In addition, the Aktases allege that JMC and

Cantanucci knowingly concealed dangerous and defective conditions and

intentionally sabotaged work done on the site to prolong the construction

period and receive further payments.  (*See id.*)  Therefore, at this juncture,

the court concludes that these allegations are specific enough and

sufficiently distinct from their breach of contract claim to withstand JMC's

motion to dismiss.  Accordingly, the Aktases will be permitted to amend the

complaint on their fraud claim.

As to the their claim for personal liability against Cantanucci, the

Aktases "bear a heavy burden of showing that the corporation was

dominated as to the transaction attacked and that such domination was the

instrument of fraud or otherwise resulted in wrongful or inequitable

consequences."  *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339

(N.Y. 1998) (citations omitted).  Accepting the facts alleged as true and

construing all reasonable inferences in the Aktases' favor, the court is

satisfied that the Aktases have adequately alleged grounds that may justify

piercing the corporate veil.  While the Aktases generally assert broad and

conclusory allegations that JMC failed to observe corporate formalities and

was inadequately capitalized, and that Cantanucci used corporate funds for personal purposes, they also allege that Cantanucci's exercise of domination and control over JMC was used to commit a fraud against them specifically, that the alleged fraud exacted upon them resulted from JMC and Cantanucci's manipulation or misuse of the corporate form, and that JMC was the "alter ego" of Cantanucci for the purpose of committing the alleged wrongful acts.  Therefore, while these allegations rest on thin reeds that will either snap or strengthen in discovery, the court will permit the Aktases to amend their claim for personal liability against Cantanucci, and accordingly denies JMC and Cantanucci's motion to dismiss at this preliminary stage.

## 2.     Warren County's Motion to Dismiss

Warren County moves to dismiss the Aktases' claim of negligence, arguing that the Aktases have failed to allege in their proposed amended complaint the existence of a special relationship that would justify the imposition of a legal duty on the County.  (*See* County Mem. of Law at 2-6, Dkt. No. 12:1; *see also* County Reply Mem. of Law at 2-7, Dkt. No. 28.)

Under New York law, the general rule is that "liability may not be imposed on a municipality for failure to enforce a statute or regulation."

*O'Connor v. City of New York*, 58 N.Y.2d 184, 192 (N.Y. 1983); *see, e.g.*,

*Worth Distribs., Inc. v. Latham*, 59 N.Y.2d 231, 237 (N.Y. 1983) (finding no

liability where city failed to enforce provisions of the city's building safety

code).  "In order for liability to be imposed upon a municipality there must

be proof of a 'special relationship' between [the plaintiff] and the

municipality."  *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir.

1990) (internal quotation marks and citation omitted).  Thus, in this "narrow

class of cases," a special relationship may arise where there is:

> (1) an assumption by the municipality, through promises or
> actions, of an affirmative duty to act on behalf of the party who
> was injured; (2) knowledge on the part of the municipality's
> agents that inaction could lead to harm; (3) some form of direct
> contact between the municipality's agents and the injured party;
> and (4) that party's justifiable reliance on the municipality's
> affirmative undertaking.

*Cuffy v. City of New York*, 69 N.Y.2d 255, 260 (N.Y. 1987) (citations

omitted).  For instance, a special relationship may be found to exist where

a municipality erroneously issues a certificate of occupancy, certifies the

safeness of the premises, or "assumes positive direction and control under

circumstances in which a known, blatant and dangerous safety violation

exists."  *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 262 (N.Y. 1983)

(citation omitted).

20

However, the overwhelming case law establishes that a municipality's failure to uncover building or safety violations during inspection "clearly [does] not constitute a sufficient predicate for imposing liability on the [municipality]." *Garrett*, 58 N.Y.2d at 262 (citation omitted); *see, e.g.*, *Green v. Irwin*, 174 A.D.2d 879, 881 (3d Dep't 1991) (finding no special relationship where municipality performed a series of inspections and allowed construction to continue despite plaintiff's allegations that violations existed during the inspections); *cf. Rickson v. Town of Schuyler Falls*, 263 A.D.2d 863, 864-65 (3d Dep't 1999) (finding no special relationship where municipality issued a building permit to demolish a structure owned by a third party); *Okie v. Vill. of Hamburg*, 196 A.D.2d 228, 232 (4th Dep't 1994) (finding no special relationship where municipality mistakenly issued building permit to construct a residence in the flood plain).

Here, the Aktases' proposed amended complaint fails to allege facts sufficient to give rise to a special relationship that would warrant the imposition of liability against Warren County.  Putting aside the inconsistencies of the Aktases' position—namely, that the County failed to discover the code violations and dangerous conditions, but still somehow notified JMC about such violations and conditions—the court finds that

21

Warren County did not owe the Aktases "a duty of care in issuing accurate inspection reports concerning the premises." (Proposed Am. Compl. ¶ 131, Dkt. No. 21:4.)  There are no allegations that Warren County assumed positive direction or control over the premises, or that it certified the premises as safe and habitable.  Furthermore, the Aktases admit that the county inspectors consistently found and notified JMC and Jung, as the Aktases' agents, of the deficient and substandard status of the project. (*See id.* at ¶¶ 31-32.)  And ultimately, the County never issued a certificate of occupation.  The court is unwilling to impose a duty on the County to keep eternal vigil over the progress of a work site; nor is the court inclined to hold the County to a heightened duty to perform absolutely exhaustive or flawless inspections.  Accordingly, the court dismisses the Aktases' claim against Warren County and denies the Aktases' motion to amend insofar as it concerns the claim against the County contained in Count XII.

## IV.  Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that the Aktases' motion to amend (Dkt. No. 21) is

GRANTED as to the claims of fraud and personal liability, but is DENIED

as to the negligence claim against Warren County; and it is further

ORDERED that JMC's motion to dismiss (Dkt. No. 8) is DENIED; and

it is further

ORDERED that Warren County's motion to dismiss (Dkt. No. 12) the

Aktases' negligence claim is GRANTED; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

IT IS SO ORDERED.

June 14, 2010
Albany, New York

United States District Court Judge

23